JOURNAL ENTRY AND OPINION
{¶ 1} Ramel Thomas appeals the denial of a motion to suppress relative to his conviction and sentence on charges of possession of drugs, in violation of R.C. 2925.11, and tampering with evidence, in violation of R.C. 2921.12. After his motion to suppress was denied, Thomas pleaded no contest to the charges and was sentenced to one year in prison. After a review of the record and arguments of the parties, we affirm the decision of the trial court for the reasons set forth below.
 {¶ 2} On or about October 5, 2003 Cleveland police officer Carlos Robles and his partner were patrolling in the area of East 139th Street and Kinsman Avenue, an area known for drug activity. The officers received a tip that drug sales were occurring from the Citgo gas station in that area and that one individual in particular was responsible for the drug traffic there. On the date in question, the two officers noticed this individual (referred to as "Mr. Smith" in the parties' briefs) and appellant loitering inside the Citgo gas station. The officers then noticed appellant "wave off" a car that had pulled up to the station.
 {¶ 3} Suspecting that the pair were there to sell drugs, the officers entered the station's kiosk by separate doors. After a confrontation, Mr. Smith was arrested for disorderly conduct, and the officers instructed appellant to place his hands on the police car for a pat-down search. Appellant failed to comply, and the officers took him to the ground, handcuffed him and placed him in the back of the police car.
 {¶ 4} Upon placing appellant in the police car, Officer Robles noticed he was chewing something. Upon the officer's request to view the contents of his mouth, appellant revealed a piece of gum. However, when the officer asked appellant to lift his tongue, appellant turned his head and markedly began to swallow. Appellant began to choke, but recovered after about thirty seconds. The officer, based on his experience, was concerned that appellant had ingested drugs and called his supervising officer, Sergeant Grazioli. The decision was then made to transport appellant to the hospital because it is the policy of the Cleveland Police Department to take suspects who are believed to have ingested narcotics to the hospital to seek medical treatment for their own safety.
 {¶ 5} Upon arriving at the hospital, appellant was given an emetic to induce vomiting. Appellant vomited twice, and a plastic bag containing narcotics was recovered, although appellant denied ownership of the bag.
 {¶ 6} "I. The trial court erred in denying appellant's motion to suppress evidence because there were no specific and articulable facts which the police could have relied on to stop, frisk, or detain appellant."
 {¶ 7} Appellant argues that his motion to suppress was improperly denied because arresting police officers had no reasonable suspicion of criminal activity when he was detained. Under Terry v. Ohio (1968), 391 U.S. 1, 88 S.Ct. 1868, a police officer may stop and investigate unusual behavior, even without probable cause to arrest, if he has sufficient evidence to reasonably conclude that criminal activity is afoot. The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id. at 21. An investigatory stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez (1981), 449 U.S. 411, 417,101 S.Ct. 690.
 {¶ 8} "The officer [making a Terry stop] * * * must be able to articulate something more than an `inchoate and unparticularized suspicion or "hunch."' Terry, 392 U.S., at 27. The Fourth Amendment requires `some minimal level of objective justification' for making the stop. INS v. Delgado,466 U.S. 210, 217 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means `a fair probability that contraband or evidence of a crime will be found,' Illinois v.Gates, 462 U.S. 213, at 238, and the level of suspicion required for a Terry stop is obviously less demanding than for probable cause." White at 330.
 {¶ 9} In reviewing a motion to suppress, this court adheres to the standard of review as articulated in State v. Curry: "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973),34 Ohio St.2d 250. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v.Schiebel (1990), 55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627."State v. Curry, (1994) 95 Ohio App.3d 93 at 96.
 {¶ 10} As this court noted in State v. Clark (2000),139 Ohio App.3d 183, 188-189, 743 N.E.2d 451 with respect to "high crime areas": "The general `special attention check' issued for the area does nothing to create reasonable suspicion in a particular case. If this were so, any individual found in an area so designated would be a criminal suspect subject to a Terry
stop. Even in high crime areas, a citizen is entitled to the presumption that he obeys the law. The investigatory stop in a high crime or `special attention' area still requires specific, articulable facts about the individual suspect or it is nothing more than random harassment." See City of Cleveland v. Fields,
Cuyahoga App. No. 82070, 2003-Ohio-1965. However, in the instant case there exists competent, credible evidence to support theTerry stop.
 {¶ 11} Police officers testified that there had been numerous complaints made by the owner of the Citgo gas station in question regarding drug activity on his property. Appellant's companion, Mr. Smith, had been warned on two prior occasions about loitering near the gas station, and police suspected him of trafficking in drugs. On the day in question, appellant was observed standing with Mr. Smith and "waving off" a car as the police approached. Officer Robles, an experienced veteran of the police force with thousands of drug arrests under his belt, deduced from these circumstances that appellant and his companion were selling drugs. Therefore, there are specific and articulable facts which warranted the initial stop of appellant, and the motion to suppress was properly denied.
 {¶ 12} "II. The trial court erred in denying appellant's motion to suppress evidence because the method and manner of the search were unreasonable and violated appellant's due process rights."
 {¶ 13} In his second assignment of error, appellant argues that the administration of medication to induce vomiting when he was transported to the hospital by police violated his rights against unreasonable search and seizure. We disagree. TheFourth Amendment to the United States Constitution provides in pertinent part: "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution require the police to obtain a warrant based upon probable cause before they conduct a search. This requirement, however, is subject to numerous exceptions. Statev. Williams, (Aug. 30, 2001), Cuyahoga App. No. 78732 at 8.
 {¶ 14} The forced ingestion of an emetic in an attempt to retrieve two swallowed capsules was viewed by the Supreme Court, due to the specific and "shocking" facts of the case, as too intrusive in Rochin v. California (1952), 342 U.S. 165,72 S.Ct. 205, 96 L.Ed. 183. However, in Schmerber v. California
(1966) 384 U.S. 757, 86 S.Ct. 1826, the Court set forth several criteria to be considered in the analysis of whether an intrusive bodily search violates the Fourth Amendment: (1) [T]he government must have a clear indication that incriminating evidence will be found; (2) the police officers must have a warrant or there must be exigent circumstances, such as the imminent destruction of evidence, to excuse the warrant requirement; and (3) the method used to extract the evidence must be reasonable and must be performed in a reasonable manner. Id at. 770-772. The reasonableness of intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure to obtain evidence for fairly determining guilt or innocence. Winston v. Lee (1985),470 U.S. 753, 105 S.Ct. 1611.
 {¶ 15} The facts of the instant case are similar to those found in a recent decision by this court in State v. DarioWilliams, Cuyahoga App. No. 83574, 2004-Ohio-4476. There, during a foot chase involving suspected drug trafficking, police witnessed the defendant place something in his mouth and swallow it. Police immediately conveyed that defendant to the hospital where he was sedated and his stomach was pumped. Doctors recovered cocaine and marijuana as a result of this procedure. On appeal, this court held that the medical procedure employed comported with Fourth Amendment standards of reasonableness under the circumstances, and a motion to suppress filed on those grounds would be properly denied. Id.; See, also, State v.Victor, (8th Dist. 1991), 76 Ohio App.3d 372; State v.Rogers (May 21, 1998), Cuyahoga App. Nos. 72736/72737.
 {¶ 16} In the case at bar, by swallowing a bag of narcotics, appellant placed himself in risk of serious harm because the sudden ingestion of a large quantity of drugs can often be fatal. Transporting appellant to the hospital was a prudent and necessary action by the investigating officers, and the administration of an emetic was not unreasonable under the circumstances. Therefore, the drugs recovered as a result of the medical procedure are properly recoverable and able to be used as evidence against the appellant. The state's actions in this case do not shock the conscience, and we find no violation of appellant's Fourth Amendment rights. Appellant's second assignment of error must, therefore, fail.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Karpinski, J., Concur.